Scott E. Borg
Barber & Borg, LLC
P.O. Box 30745
Albuquerque, New Mexico 87190-0745
505-884-0004
505-884-0077 - facsimile
scott@barberborg.com
Pro Hac Vice Counsel for the Plaintiff

IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF ARIZONA

JAYNE SALT,

    Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

    Defendant.

**COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT FOR INJURY DUE TO MEDICAL NEGLIGENCE**

Plaintiff, Jayne Salt, avers for her complaint the following:

1. Jayne Salt resides in Shonto, Arizona, within the Navajo Indian Reservation, and in Winslow, Arizona.

2. This civil action seeks compensatory damages arising from the negligence of employees/personnel at Tuba City Regional Health Care Corporation ("TCRHCC") located in Tuba City, Arizona, a facility operated by a tribal contractor through the U.S. Department of Health and Human Services and the Indian Health Service, with funding provided through Public Law 93-638, the Indian Self-Determination and Education Assistance Act.

**JURISDICTION AND VENUE UNDER THE FEDERAL TORT CLAIMS ACT**

3. This action is authorized by and is brought pursuant to the provisions of the Federal Tort claims Act (FTCA), 28 U.S.C. §1346(b) and 28 U.S.C. §2671, *et seq.,* and also pursuant to 28 U.S.C. §1331.

4. Federal statutes, including the FTCA, vest this court with exclusive jurisdiction over plaintiff's claims in this case.

5. The FTCA makes the United States liable for the negligent acts and omissions of federal "employees."

6. Federal employees include, but are not limited to, employees of the Indian Health Service and to certain contractors and organizations such as TCRHCC and its governing board.

7. At all times material to this case defendant United States contracted with, funded, and controlled TCRHCC pursuant to Public Law 93-638, the Indian Self-Determination and Education Assistance Act.

8. TCRHCC provides medical care to Native Americans who are members of recognized tribes pursuant to various federal statutes and other law.

9. At all times material to this case defendant United States, acting through the Indian Health Service and TCRHCC, held itself out to have the ability to provide medical care to members of the Navajo Nation and plaintiff at TCRHCC, including the ability to address plaintiff's medical/health problems as to which plaintiff sought care at TCRHCC.

10. Plaintiff, through legal counsel, presented to the U.S. Department of Health and Human Services a timely administrative claim under the FTCA alleging negligence by federal "employees" of TCRHCC in the provision of medical care to plaintiff. (Exhibit 1).

11. As contemplated by statute, defendant has had more than six months to investigate plaintiff's claim and to attempt settlement with plaintiff.

12. By statute, a claim presented under the FTCA is deemed denied by the United States six months after it is presented, and plaintiff is then authorized to file a lawsuit against the United States.

13. Despite plaintiff providing defendant with documentation of her claim, defendant has not attempted to settle with plaintiff; nor has it denied her claim.

14. Plaintiff has now exhausted her administrative remedies as required by the FTCA.

15. Plaintiff is authorized by statute to file this action in the United States District Court for the District of Arizona.

16. At all materials times, plaintiff was a tribal member of the Navajo Nation and was at all material times a resident of the Arizona portion of the Navajo Indian Reservation.

17. Venue is proper in this district under 28 U.S.C. §1402(b).

## FACTUAL BACKGROUND

18. On April 4, 2016, plaintiff injured her right ankle. She was treated and released at Banner Page Hospital in Page, Arizona. Over the next few weeks, plaintiff's right ankle pain worsened.

19. In July, 2016, Plaintiff went to TCRHCC, where she was treated by podiatrist Dr. Keith Goss.

20. Plaintiff reported to TCRHCC that she suffered from diabetes mellitus type II, hypertension, chronic kidney disease, gastro-esophageal reflux disease, hyperlipidemia and an upper respiratory infection.

21. Dr. Goss identified a fracture in plaintiff's right foot and also diagnosed Charcot arthropathy. Dr. Goss recommended surgery. Plaintiff reports that Dr. Goss was adamant she needed surgery. Plaintiff also reports that Dr. Goss did not provide her with other treatment options.

22. On July 5, 2016, Dr. Goss performed surgery, operated on plaintiff and placed screws and a plate in her foot. Specifically, Dr. Goss performed a Charcot reconstruction with a

medial column fusion, using a tricortical iliac bone graft, and a Smith & Nephew medial column fusion plate, which was fixed with screws. After surgery, plaintiff's right foot was placed in a controlled ankle motion ("CAM") boot.

23. Plaintiff was discharged from TCRHCC on July 11, 2016. Dr. Goss gave her a "good" prognosis.

24. Sometime after the surgery, as early as November, 2016, the screws that Dr. Goss placed during the first surgery broke, despite plaintiff being wheelchair bound.

25. Dr. Goss performed another surgery on plaintiff on February 14, 2017, for "right foot hardware removal and reconstruction with external fixation." Dr. Goss diagnosed "failed hardware" as the cause of the problem.

26. On March 26, 2017, plaintiff was readmitted to TCRHCC with a post-operative infection in her right foot. Plaintiff reported extreme pain, nausea, and vomiting as a result of the infection. Plaintiff underwent a course of antibiotic treatment and was hospitalized until April 3, 2017.

27. On April 12, 2017, plaintiff was readmitted to TCRHCC and Dr. Goss performed yet another surgery for replacement of "failed external fixator wires." Dr. Goss removed broken pins and implanted two external fixator pins into plaintiff's foot.

28. On May 2, 2017, plaintiff was again readmitted to TCRHCC because of "broken transfixation wires." Dr. Goss performed another surgery to remove a "proximal ring of external fixator with accompanying wires." However, the pins broke yet again.

29. On June 21, 2017, Dr. Goss performed another surgery, this time for "intramedullary beaming of the medial column" of plaintiff's right foot, after plaintiff had to go to the emergency room because of "a wire protruding from her first metatarsal phalangeal joint."

30. Following further complications and more problems with the surgical hardware in plaintiff's foot, Dr. Goss performed his final surgery on plaintiff in August 2017.

31. Plaintiff has suffered excruciating pain and has not been able to walk since Dr. Goss first operated on her foot in July 2016.

32. Plaintiff transferred her care to Winslow Indian Hospital, where she was treated by podiatrist Dr. Isaac Palacios. Dr. Palacios was not able to treat plaintiff conservatively; he referred her to Northern Arizona Orthopedics for a right, below the knee amputation due to osteomyelitis.

33. Plaintiff's right foot was amputated on February 22, 2018. The amputation was a last-ditch effort to alleviate plaintiff's symptoms and to control the severe pain she was experiencing. Plaintiff had a complex pain syndrome, coupled with inflammation and infection.

34. After the amputation, plaintiff was admitted to Mountain Valley Rehabilitation Center in Prescott Valley, Arizona, for recovery.

### CAUSE OF ACTION - DUTY, NEGLIGENCE, AND CAUSATION

35. Plaintiff repeats the averments stated in the preceding paragraphs and incorporates them by reference as part of her count of negligence.

36. The United States is legally responsible for the negligent actions of TCRHCC's employees, while those employees are performing job duties for the employer or engaged in furtherance of the interests of the employer.

37. The involved staff who participated in the medical care of plaintiff, specifically, but not limited to Dr. Goss, were employees of the Indian Health Service at all pertinent times.

38. Those employees were on the job performing job-related duties for TCRHCC at the time they were engaged in providing healthcare to plaintiff.

39. If any TCRHCC staff were not actual employees of the Indian Health Service at the time of the incident(s), they may have been contract employees whose contracts with the defendant provide that the defendant is liable under the Federal Tort Claims Act for their negligence.

40. If any negligent TCRHCC staff was not an actual employee of the Indian Health Service at the time of the incident(s), and the preceding paragraphs 18-34 thus do not apply, they may have been contract employees for whom the defendant is vicariously liable under the Federal Tort Claims Act pursuant to the doctrines of law such as agency and *respondeat superior*.

41. Defendant had a duty to exercise reasonable care in the diagnosis and treatment of plaintiff and to possess and use the degree of skill and learning ordinarily used in the same or similar circumstances by members of their professions in the provision of healthcare.

42. The involved staff breached the duty of reasonable care owed to plaintiff and are guilty of the following negligent actions and omissions by failing to measure up to the applicable standards of care, skill, and practice required of members of their professions, to wit:

    a. Failure to seek out guidance, consultation, or advice from other physicians and/or podiatrists prior to commencing an invasive procedure that more likely than not involved an infectious disease process occurring in a known diabetic;

    b. Failure to follow policies and procedures of the facility when providing medical services to plaintiff and in performing an invasive procedure on a known diabetic;

    c. Failure to transfer plaintiff in a timely manner to a hospital that could provide a higher level of care;

    d. Negligently compounding plaintiff's injury with multiple operations that only

harmed plaintiff further;

    e.    Failure to consider plaintiff's health history, particularly her diabetic history;

    f.    Failure to communicate;

    g.    Failure to diagnose properly and in a timely manner, including failure to perform a differential diagnosis;

    h.    Failure to review plaintiff's medical records in a timely manner;

    i.    Negligent hiring, training, supervision, and retention of employees/personnel;

    j.    Negligent performance of pre-surgery, surgical, and post-operative surgical procedures;

    k.    Failure in the handling of follow-up care, including but not limited to failure to provide appropriate and timely follow-up care;

    l.    Failure to obtain informed consent from plaintiff;

    l.    Negligent credentialing; and,

    m.    Negligently and carelessly failing to measure up to the requisite standards of care and skill required and observed in the field of medicine and emergency medical care provided by physicians, and related fields, while performing or engaged in healthcare, and in further particulars that, at this time, are not known to plaintiff as to the specific facts, but which are believed and hereby alleged will be disclosed during discovery and in the course of the litigation.

43.    The negligent actions and omissions of the TCRHCC staff were actions and omissions for which the United States would be liable to plaintiff for negligence under the laws of the State of Arizona, the place where the incident occurred, if the United States were a private individual at fault for the same negligence.

44.    At all times material hereto, plaintiff was a patient of the Indian Health Services,

an agency of the United States Department of Health & Human Services, and was in the care and custody of TCRHCC and involved staff, dependent upon the government, the hospital, and the hospital staff for her medical care.

45. Defendant United States, acting through its employees, negligently failed to provide appropriate, reasonable, and required medical care to plaintiff, which gives rise to a negligence cause of action against defendant, as laid out herein.

46. As a direct and proximate result of the negligence of defendant United States and its employees, plaintiff has endured multiple surgeries, pain and suffering, past and future medical costs, permanent mobility impairment, permanent disfigurement, past and future financial losses, impairment to her activities of daily living, and such other injuries and damages as will be proved at the trial of this matter.

## DAMAGES

47. Under the FTCA and the law of the place of the wrong, the State of Arizona, plaintiff is entitled to compensatory damages for her losses, both special and general, non-medical expenses incurred, and loss of value of household services. Defendant United States is liable to plaintiff for her losses and plaintiff hereby claims a right to recover all allowable damages recognized by Arizona, whether specifically mentioned herein or not.

## CONCLUSION

**WHEREFORE**, plaintiff prays for the court to enter judgment for plaintiff and to order that she be compensated for all losses allowed or recognized by law, for an award of allowable costs, and for such other relief as recognized under the laws and rules that govern this case.

    Respectfully submitted,

    */s/Scott E. Borg*_____
    Barber & Borg, LLC

Attorneys for the Plaintiff
P.O. Box 30745
Albuquerque, New Mexico  87190-0745
505-884-0004
scott@barberborg.com